Case number 18-4058, Davina Hurt et al. v. Commerce Energy et al. Arguments not to exceed 15 minutes per side. Ms. Patton, you may proceed for the appellant. Thank you. Good morning, and may it please the Court, my name is Shannon Patton. It's my honor and privilege to be here today representing my clients, the appellants, collectively Just Energy.  If it looks like a duck, if it walks like a duck, if it quacks like a duck, if it swims like a duck, it's a duck. The plaintiff's appellees in this case, they look like salespeople. They talk like salespeople. They act like salespeople. They're compensated like salespeople. They're salespeople, no matter how much the appellees desperately want them to be something else. If these people aren't engaged in making sales, then what are they doing? Can I ask you just a procedural question before you get to the merits of that? Certainly. I understand the law to be, and correct me if I'm wrong, that it's a question of law whether the historical facts rise to the level of a particular employee being exempt under the outside salesperson exemption or other exemptions. So I guess I question why there was a jury impaneled to decide that question. We actually disagree that the jury needed to be impaneled as well, Your Honor. What their primary duties are, are a question of fact. We believe those were undisputed. Applying those duties to the law is a question of law for the court. Do you have a case for that? That's throughout the FLSA cases, if you need us to identify some specific ones. But that is the rule of law. And the exemption contains just two specific exemptions. The primary duty must be making sales or obtaining orders or contracts for services, and the work must be performed away from the employer's place of business. That second element is not at issue in this case. Its focus is on what the primary duty is, whether it's making sales. We've raised three assignments of error. We believe that the district court first erred in denying several different motions for judgment as a matter of law. We believe the district court erred in instructing the jury on what the elements of the outside sales exemption actually are. And finally, we believe the district court abused its discretion in admitting evidence of plaintiff's compensation levels when compensation is not an element of the exemption. Now the first two, the judge in this case gave the Fair Labor Standards Act just a tortured reading of the statutory language. He read elements into the exemption that don't exist, and that reading pervaded his decisions on judgments as a matter of law and in instructing the jury. And those errors can be... Weren't those elements the very elements that the Supreme Court looked at in Christopher? I'm sorry? Weren't those the factual elements and the arguments of what the court looked at below? Doesn't that track the Christopher Smith-Klein Beacham case? No, it does not. Again, the two elements, making sales or obtaining orders or contracts for services. Christopher doesn't stand for the proposition that a salesperson must have the authority to bind. It does not stand for the proposition that if and only if there are regulatory requirements that an employer can reject a contract because of regulatory requirements. Christopher doesn't stand for that. Christopher actually broadened the exemption and said it applies to anyone who's making sales in some sense or obtaining the maximum commitment possible. But didn't Christopher specifically explain that the making sales analysis is functional? Absolutely. Rather than a formal inquiry, and what you do is you view all of the employees' responsibilities in the context of the particular industry. Exactly, and that's what the Supreme Court did in Christopher. It reviewed it in the context of the pharmaceutical industry where pharmaceutical reps cannot make sales directly to the patients. And in what context and why in Smith-Klein were they not able to make sales directly? They weren't able to make sales directly because of the regulatory requirements unique to pharmaceuticals. So instead of selling to the end user, to the patient or even to the retail pharmacy, you know, they sold to the doctors. But the Supreme Court held they were still making sales. So what Christopher stands for, it doesn't stand for the proposition that you have to obtain a final and binding commitment. You look at it in the context of that particular industry. So in that particular industry, they did everything they could. They did everything they could, and that is precisely what the plaintiffs in our case did. And they did far more and obtained far more binding commitments than the pharmaceutical representatives there, who again marketed or who sold to the doctors. Our plaintiffs here are engaging face-to-face with the customer at the door, selling them on the product, educating them about Just Energy's gas and electricity products, overcoming objections like sales people do. So what regulatory or particular environment prohibited those employees from making sales? What was going on in actually making the sale? Our position is not that in the energy industry, which is of course, you know, very highly regulated, but our position is not that regulatory requirements prevented the plaintiffs from making a sale. We believe the judge, you know, erred in that regard as well. But here, a contract in the energy industry, just like, you know, any other, you know, any other industry where you have a contract with certain conditions precedent that had to be satisfied before the energy would actually begin to flow to the customers. Where are the sales reps actually selling? They're selling gas and or electricity. Did you say they're selling goods then? We stipulated that it was a tangible commodity. Do you think it's inappropriate for us to rely on the other provision about obtaining orders for services because they're not selling services? We don't think it matters. We think it's a distinction without a difference. The definition of sales in the Fair Labor Standards Act includes a sale or sell to include any sale, exchange, contract to sell. Why is the obtaining orders provision in the regulation? Because what work does it do over and above the making sales provision? I guess the distinction would be you can make a sale, you can sell a good or a service, but the way the language reads, you obtain a contract for a good or service. We actually think this is a hybrid kind of a thing because certainly gas and electricity are products, they're tangible goods, but Just Energy is providing it to the customer's home. It's not like the customer goes to a brick and mortar building and actually collects the product and takes it home. So you flip the light switch, that's a service. But again, even if we're just looking at the making sales prong, they're obtaining a contract for Just Energy to provide the gas and electricity. And like the sales representatives and Christopher, getting a signed signature at the door, after educating the customer on the product, obtaining their commitment to buy, that was the maximum commitment the representatives could get at the door, and that's what Christopher requires. That's what all the Fair Labor Standards Act requires. Let me ask you this, though. Isn't there a difference between soliciting applications, which maybe some would argue is what occurred here, and actually selling? My esteemed opposing counsel will make attempts to make a distinction between applications and agreements. The agreements the customer signed in this case said right on the top, customer agreements. So for purposes of this case, use of the term application and contract we think has no difference. But to your question, an application in the traditional sense, a contract is binding contains material terms. An application, say in the sense of a job application, the terms aren't fully defined or binding at the time the application is submitted. You might negotiate a salary, you might negotiate a title, things like that. But the contract that the customer signed at the door contained all the material terms. They weren't going to be changed or renegotiated. What's signed does not bind the company. So if the company is not bound and has the discretion to reject it for some specified reasons or no reasons, that's not a consummated agreement. The company will be bound provided certain conditions precedence are satisfied. Well, no, as I understand the facts, the company has the discretion to reject it even for no reason if it chooses to do so. And there is not a shred of evidence in the record, Your Honor, that that ever happened for any arbitrary reason. Several plaintiffs may have testified contracts were canceled, maybe they didn't know, but there is no evidence of any arbitrary cancellations. Why would they, Your Honor? Are you standing here and stating that the company did not have the authority to reject the contract? They didn't have the authority. They didn't reject any contracts arbitrarily. They rejected contracts. That's not my reason. Did they have the discretion and authority to do so? Like any prudent business, sure, if a customer passes a credit or fails a credit check and they're not going to be able to pay, sure, they're not going to honor that. So your statement to us is if the customer could pass a credit check, then your client had no discretion or ability to reject the contract. They wouldn't do so. They wanted these contracts. That's not my question. Did they still have discretion? Sure. The language of the contract says it's at their discretion, but that's to prevent things like fraud. That's lawyer argument. You're in lawyer argument now. We're asking about record evidence. And the record evidence is that the application includes a discretionary right. But it was subject to, again, certain legal or technical requirements, which was key to the district court's decision in the Daley case in the Northern District of California and to the flood courts, both the district court and the Southern District of New York and the Second Circuit. Both held, you know, the flood court said, and this is a quote, although some of flood customer signups did not ultimately receive Just Energy's product, this was for technical and legal reasons. The fact that Just Energy, like any prudent business, might occasionally decline to go through with a transaction, for example, if it turns out the customer changes his mind or is uncreditworthy, that does not alter the character of flood zone activities to retroactively transform them into something other than making sales. The court's focus really needs to... There are interesting differences between flood and this case. In this case, the hurt individuals went to these homes that they had to go to and were on their list, and they could get someone to sign an application, but they could not complete it. Whereas in flood, well, no, let me back up. The plaintiffs here, once they had that, they had to leave. They could not stay at the location. They would initiate a verification call, and then they left, and that was the last contact they were allowed to have with the people to whom they were selling. But that's not true in flood. The counselors remained nearby, but outside the customer's presence, while the customer made the third-party verification call. After that, the verifier gave the confirmation number, and the training materials allowed those solicitors to go back in, to meet with the people they were selling, to confirm the program details, to ensure that the customer had no further questions, and to close the sale by giving the customer from this solicitor the actual contract. That's a completely different arena from what the plaintiffs in this case were allowed to do. I'm into my rebuttal time, Your Honor, but I would like to answer that question, if I may. It's really not very different. Just Energy, as a matter of course, in every jurisdiction in which it operates, engages a third-party verifier call. Different jurisdictions have different regulatory requirements that either require the salesperson to leave and never come back, others allow the representative to... That's part of the constellation of factors as to whether these were actually salespeople or application providers. No, no, they were salespeople. Their function at the door was the same in both flood and daily. How is their function at the door the same? If I can say, here's what I want you to do, here's an application, you can fill it out, take the application, I have to leave now, no further contact with that person. Versus flood, who said, oh, okay, you filled out this application, I have to step out while you make the verification call, and as soon as that is completed, you will be given a number, I will come back in the room, I will enter the number on the contract, I will answer your questions, I will tell you how the program works, I will confirm the details, and I will close the sale. No, in both cases, when the verification call is initiated, there's a number. There is a number assigned to the call. These plaintiffs weren't there to see or know what the identification number was. They were gone. That was the requirement for them. No, they would have a number from the third party verifier and then hand the phone to the customer and then leave. And then they left. And then they would leave in Ohio. In different jurisdictions it's different. I'm also concerned about we have not gotten to the rest of the SmithKline Beecham case method that the Supreme Court used to analyze these sales. After setting up the test as a functional test, discussing the unusual, unique regulatory environment in that case, then the Supreme Court turned to the external indicia and they looked at whether the workers were hired for their sales experience, whether they were trained to obtain the maximum commitment, whether they worked away from the office with minimal supervision, and whether they were rewarded with incentive compensation. Don't those factors fall in favor, as found by the court below, that these particular individuals were not salespeople because they weren't hired for their sales experience? They worked away from the office, but they were required to report every day, they were closely supervised. If they went in an area of a community that was not on their list, they were in trouble. The supervisors had complete control of their schedule, so they worked, what, 12 hours a day? Some, seven days a week. And they were also provided a detailed script and compliance matrix. Isn't that very different from the pharmaceutical salesperson who goes out in the SmithKline Beecham case? Supervision, Your Honor, and in SmithKline, the court got to the indicia as further support for what they had already decided, that the pharmaceutical reps fell within the language of the statute. Here, Flood and Daly have both held the indicia neutral. Certainly our plaintiffs, we concede, were not hired for their prior sales experience, but there's not a fundamental difference between entry-level sales and exempt outside sales. And as the Vasto courts, as the Flood courts said, we decline to read a subject-to-supervision requirement. There's nothing inherently incompatible. What else was distinct in light of these external indicia? Isn't Flood very distinct in the wages that these employees made? The evidence in this case is people worked for sometimes months and made zero. But in the Flood case, the lead plaintiff made more than $70,000 a year in commissions. Doesn't that fit within the FLSA exemption discussion that says that these outside-sale peoples typically earned salaries well above the minimum wage? True in SmithKline, true in Flood, not true here. Enjoyed other benefits that set them apart from the non-exempt workers entitled to overtime pay. True there, not true here. Performed a kind of work that was difficult to standardize in any time frame and could not easily spread to other workers. Well, true. Those workers in SmithKline Beach, they were going out and they were making the contacts and creating these relationships with the doctors. The guys in this case were assigned to a street, told where to go, told how long they could spend, given their blurb, told they couldn't go anywhere else, and they had no opportunity to even complete the sale. Why isn't, under the very Supreme Court precedent here, these people just a completely distinct category? No, they're not, Your Honor. Again, as Flood teaches, as Vasto out of the Second Circuit teaches, there is no subject-to-supervision requirement. The compensation requirement is also, that's also our position, has no bearing, no place in this case. I'm struggling with your argument that you may narrowly define this category and call it a legal conclusion, when in fact all of the cases, including SmithKline Beacham, says this is a functional rather than a formal inquiry. It views the employee's responsibility in the context of a particular industry, and then it goes on to look at all of the factors that distinguish these plaintiffs from the cases, for example, in Flood, which you were successful, and in SmithKline Beacham. I'm a little at a loss as to how you can give the wavy hand to factual distinctions between your case and the cases that should govern. Well, I don't believe, I mean, certainly there are factual distinctions between our case and SmithKline Beacham. There really aren't any meaningful factual distinctions between the Daly and the Flood cases. I think these plaintiffs here would say the guy in Flood was making $70,000 a year, and that's a big difference from what I'm making. But, Your Honor, there is no requirement or no element in the outside sales exemption for a minimum salary threshold. That has been understood. There's no you have to make X, but it is part of the constellation of factors that the court looks to. And in this functional test, those things matter. Otherwise, anybody, anybody that you hire and that does some work off, no matter how much you control them, no matter what you pay or don't pay them, they're just outside and they are exempt, isn't the concept of the FLSA that the door-to-door solicitation or the purpose would be that we can exclude outside salespeople from the coverage of the protections of minimum wage and maximum hour laws? Because they already make salaries well above the minimum wage. They enjoy other benefits, but in this case, that's simply not true. No, Your Honor, the functional inquiry focuses on the nature of the work. The external indicia is sort of a bolster, but again, the indicia is paid on a commission basis. It's not paid highly, bless you, Your Honor, paid highly on a commission basis. And the Flood courts and the Fifth Circuit and the Mesa case have all squarely rejected that principle. A subject compensation and the purpose and spirit of the FLSA really have no place in the court's analysis in reviewing the plain language of the statute and the regulations, particularly in light of the Supreme Court's decision in Encino, which requires a fair rating. We believe the analysis should be limited to the plain language of the statute. If there are no other questions, I'm exhausted by time. I will sit down. Thank you. Good morning, Your Honors. May it please the court, Nicole Fiorelli for the plaintiff class in this case. Judgment as a matter of law was absolutely not appropriate to be granted to the defendants. As the discussion with my opposing counsel illustrated, there are a number of factors here that the jury had to look at in deciding whether or not the exemption applied. Can I ask the same question of you that I asked of your colleague on the other side of setting aside the factual distinctions between these cases? It still was my understanding that the ultimate conclusion about whether a particular employee fell within a particular exemption was a question of law for the court. Historical facts, fact-finding, maybe it was for the jury, but I don't understand why the ultimate conclusion of whether these individuals were outside salespeople would have gone to the jury. Sure, Your Honor. So as part of the outside sales test, there are a number of indicia, level of control, whether they're hired for their sales experience. And it's the jury's job to weigh these factors, how they tilt, whether they tilt in favor of exemption or whether they tilt in favor of... Well, I mean, so the jury could make findings on each of these indicia and whether they, a fact-finding on a particular salary or the particular hours worked. But then at the end of the day, isn't it the court's job to make the ultimate determination based on those fact findings? Is this person an outside salesperson? No, Your Honor. And if not, I'm just curious, do we have case law on this? Yes, I would direct, Your Honor, to the case of Killian. It was actually out of this court, and in Killian, the court discussed whether the plaintiffs were making sales. Then they also discussed some of the indicia. And in that case, the district court had declined to consider the indicia and granted summary judgment to the employer. And this court had held that was error. They needed to look at the indicia. That's fine. I'm not disputing that. So there's the legal question of what an outside salesperson is. There's a factual question of what historically people do. And I'm just curious about the ultimate conclusion. Okay, is this person an outside salesperson? Is that ultimate conclusion for the jury or for the judge? I think it depends on the situation, Your Honor. And when there's factual issues, when there's different indicia involved, I think it's for the jury. And I wasn't getting there quite fast enough, but in Killian, the court expressly said that the court is to identify which factors are relevant, and then it's up to the jury to determine which way they tilt. So in that regard, that is exactly why judgment as a matter of law for the defendants is not appropriate here. The district court did not in this case, and found that based on the indicia, and based further on the fact that these workers had no ability to decide whether or not this application was in fact going to turn into a sale, these things precluded judgment as a matter of law. Now, as we're looking at these indicia, I mean, Justice Energy's position is that we're entitled to judgment as a matter of law because the indicia don't matter. The Supreme Court did this as a secondary analysis, and we don't need to get there. We just need to say, are they getting these people to sign this application at the door? That is not what the vast majority of courts have held. The vast majority of courts do in fact look at the indicia. Yes, Flood had sort of been critical of looking at the indicia in the outside sales test, but then if you look at the decision after that, the Vasto decision, the Second Circuit after the Flood decision actually went through and analyzed the indicia, all of the indicia that Christopher discussed. So it is absolutely, the Supreme Court did not just go through, have an academic exercise in going through these indicia. They matter to the outside sales test, and because they matter to the outside sales test, and there is evidence in the record, as Your Honor, Judge Strange went through, their tight supervision, the fact that anyone was hired for this job, they were working long hours, they weren't making a lot of money, all of those things support the jury's verdict in this case. The standard is whether or not a reasonable juror could have found for the non-moving party, and absolutely, given the fact that there was such tight control over these individuals, the fact that when they left the door, they didn't know whether that application was actually going to turn into a paid commission, and in fact, 50% of the time, and in some cases it did not, even workers who were good at their job, there was testimony at trial that even the workers who were great at this had a 30% rejection rate, and that was not, that had to do with credit, and that had to do with Just Energy's unfettered discretion to reject deals. The workers... How much does your case hinge on the idea that the agreement, or whatever you want to call it, that it was an application and not an agreement? If we find that it's an agreement, do you think that you would lose because they're engaging in making sales defined as making contracts for sale? No, Your Honor, because I don't feel that it is an agreement, because... But just assume... Putting that aside, I think that we still prevail for the reason that Judge Gwynne had mentioned in his post-trial opinion, the fact that there's all these other indicia that suggest they were not, in fact, making sales. So even if we find that they were making contracts for sale because these were agreements, we would still say that the external indicia should trump the claim... Right, the jury's finding, in looking at the totality of the circumstances, the jury's verdict was supported. It's not contrary to all reason that they should find these people to not be exempt, given the evidence in the record about these other indicia that went in plaintiff's favor. Can I ask the hypothetical? Oftentimes there's agreements where you have a 30-day money-back guarantee or something to that effect. If a door-to-door salesperson was selling vacuums and the person on the other side could get their money back and return the vacuum within 30 days, the agreement wouldn't be final because of that option, but would you say that that would make it fall outside of the outside salesperson exemption because it wasn't a binding commitment? I think it depends on what the employer's role is in that. I mean, in this instance, we have the employer controlling whether or not it goes through, irrespective of any regulation. They are the gatekeeper as to whether this turns into a sale. In your hypothetical, if the employer was the one who had that policy, I would think if the employer had the policy, there would be an argument that maybe the exemption would... I just think it's quite common for salespeople to have refund policies. If you don't like the product, you can return it, and that's part of the sale, so to speak. Right, but this is more than just a refund. I mean, there's that component to it, too, because by law they have so many days to cancel, but then beyond that, Just Energy gave people 60 days to cancel, and if you cancel within 60 days, the salesperson didn't get their commission. But the other part of it here, irrespective of the refund component, is that they may not be approved in the first instance. It was Just Energy who decided whether these people became a customer. That's what I'm trying to do. I'm trying to figure out what type of commitment is sufficient. It seems to me we can't say that an absolute binding no refund policy makes you fall outside the salesperson exemption, because that would basically gut the exemption, because I would think that most products being sold, there's going to be some type of refund policy. So what type of commitment is sufficient, in your view, to make it fall within the outside salesperson exemption? If there's a refund policy, but then other than that, they are committed to go forward with the transaction, surely that would be a commitment. But that's what we have. What's the distinction between that case and this case? There's two sides to it. That's on the customer side. But on the employer side, the employer still has to approve it. Why does it matter which side it is? Because, for instance, I'll go back to the Killian case. In that instance, the workers were getting these grocery stores to commit to paying on these orders for their products. That's a commitment. But this court still held the fact that it was the employer who was controlling how much volume that the employee was able to get, that employer control said, this court said, as a matter of law, we cannot conclude that these people were exempt outside salespeople. And the jury has to determine whether or not, based on that fact and all these other indicia, whether or not they meet the sales exemption. So I don't think you can look at just whether are they obtaining a commitment. There's a whole other part about what happens afterwards that's relevant. And that's through, we cited a number of cases in our brief. The Killian case, for example, Burling v. Real Stone out of the District of Idaho, where the employee was getting sales proposals from these retailers that they went to. I think they were selling stone. And these retailers would agree. He would draft up the sales proposal, get them to sign it. They would commit to buying this initial inventory of stone. That's obtaining a commitment. And he would then turn that into his employer. And it was the employer who decided whether or not that was actually going to go through or not. And the court actually went farther than our judge did here and said, as a matter of law, that's not making sales. Summary judgment's appropriate for the plaintiff. And there's other cases that sort of support that overall concept, that when there's a holdup on the employer end and the worker can't influence that at all, then there's no exemption. I still don't really, I guess, I don't understand why. Can you tie it back to the regulation and why that kind of processing and the option to rescind makes it fall outside sales? So what in the language of the regulation or of the definition of sales make it no longer a sale? Right. Well, sale is defined as a contract for sale. And I don't think we have a contract if the employer can agree to say there is no contract. I mean, there was only a contract in this case if Just Energy said there was a contract. And that was totally separated from what the worker was doing. So I think that that's maybe where some of the courts have come out on this issue. The other thing is if you look at the overall capacity of a salesperson or their functional, what they're doing and looking at the overall picture, you know, there's the issue of control and whether or not they're highly supervised or whether they are independently going out and trying to sell things. And I think that that factor suggests it matters in terms of who's able to close the deal, if they have any control over that or not. And in a situation where you take that out of the worker's hands, because exempt salespeople are supposed to be independent. They're supposed to be, you know, not highly supervised. They're working all kinds of hours. Their pay is not conducive to an hourly rate. And these are all factors discussed in Christopher. And when you have a highly regulated individual going out, you know, where to work, what street to work, what doors to knock on, what precisely to say, then you have to leave after you're at the door. You're not allowed to have any further contact with that customer. You know, that's not the independent salesperson who's, you know, meeting with clients, taking them out to dinner, you know, sort of doing more of traditional salesman-type activities. This is very controlled, so it doesn't fit the picture of what a salesperson is if it's the employer who ends up, you know, holding the keys as to whether this thing goes through or not. Can I ask kind of another procedural question about just how the FLSA works? So I take it that this case and the Second Circuit case are effectively the same employees in some respects, because both of them were national classes? There was not an overlap because there's different defendants and different defendants are, like, in control of different offices. So the offices, I think, were different. So none of the employees in this case were employees? I do not believe so, no. I mean, this was an opt-in case, too. So we had an Ohio Rule 23 class, which virtually almost no one opted out. And then the opt-in case, I think there was a New York office included in the class definition, but I think we only had a handful of people, and I don't think there was overlap. So for that New York office, if we were to rule differently than the Second Circuit, what law would they be bound by? Because New York is in the Second Circuit. Well, I don't know. That's a good question. I mean, if it's a federal claim, as a practical matter, I mean, I think that any statute of limitations would probably be run at this point, so I'm not sure that it would come up for... Forward-looking, I suppose, if the Second Circuit case has told them that it's okay for these individuals to be outside salespeople. Under New York law. Well, actually, that case was under New York law, and I believe there was a federal claim in that case as well. So I think that if they're in New York, they would be bound by the Second Circuit's decision. But I will say, and Judge Strand touched on some of this, there were differences between the two cases, different record evidence. For example, in Flood, in addition to the fact that he was highly compensated, and the evidence in here was much, much different, the court in Flood said, while there was an occasionally... technical issue, the evidence record here showed that it was not technical. I mean, 50 percent of these things were being rejected. So there's a big factual difference. And how can you say that an application that gets rejected 50 percent of the time when the employee has nothing to do with it, that that's still, as a matter of law, making sales? And I think that Judge Gwynne reached the right conclusion when he sent it to the jury. One last question, if it's okay. So you have an FLSA claim and an Ohio claim. Correct. You concede that they kind of rise and fall together? Yes. Thank you, Your Honor. Thank you, Your Honors. I will try to be brief. A couple of quick follow-ups. Judge Murphy, I think you have it absolutely correct in that. There really were no questions of material fact, and the district court in this case, whether the outside sales exemption applied really was a question of law at that point that should have been decided for the court. We believe the court should have either entered a directed verdict in defendant's favor, or granted our motion for judgment as a matter of law after the jury verdict. Would you agree if the court thought that they were outside salespeople at that point, that the court should have entered a directed verdict for the plaintiffs? I'm sorry, for the defendants. We moved for a directed verdict. There was no motion for a directed verdict on the plaintiffs? Well, if it's a legal question, the point I was trying to make is if it's a legal question at the end of the day, once the facts are determined, the court has to decide one way or the other. My only thinking about the case is that that ultimate decision was for the court, whether to say they were outside salespeople or to say that they didn't fall within the exemption.  But it's within the prerogative of the jury to make the factual determinations upon which the court then would agree or not agree. That is correct. So we believe judgment as a matter of law should have been entered into our favor on the factual record. On the factual record, you contest all of the jury's findings of fact in this case? All of their findings about the distinctions between flood and what these plaintiffs had to say? What they had to do? How their work operated? No, we don't believe there were... Let's assume the control. We agree they weren't hired for their prior sales experience. But we're not arguing that the indicia shouldn't have been considered or not applied. We're just arguing that they shouldn't have been the primary. In our case here, the jury couldn't have even gotten to the indicia based on the instructions because that instruction that they could or may consider these external indicia followed the instruction that required the plaintiffs to... I'm sorry, that required the jury to consider the extent to which the plaintiffs could have the authority to bind the company or to consider the company's discretion to reject, which we maintain are simply outside the exemption. Another point I'd like to clarify is that these contracts were binding, just energy was committed and bound by the terms of the contract, provided the conditions precedent were satisfied. After the agreement was signed and those conditions were satisfied, there was no other upselling. There was no other renegotiation or change of terms. My time is running out, so I would just like to say, I'd like to ask the court, if you had on your door at your home a sign that said no salespeople or no solicitation, and one of these plaintiffs knocked on your door and attempted to convince you to become a customer of just energy and get your gas and electricity from them, would you feel like that sign was violated, that a salesperson had in fact knocked on your door? We submit that the easiest explanation is typically the correct explanation, and these people were outside salespeople. We respectfully request that you reverse the district court.